**STATE of Missouri,**
**Plaintiff/Respondent,**

v.

**Robert DUKES, Defendant/Appellant.**

**Robert DUKES, Movant/Appellant,**

v.

**STATE of Missouri,**
**Respondent/Respondent.**

No. 57040, 59357.

Missouri Court of Appeals,
Eastern District,
Division Two.

Aug. 6, 1991.

**374**

Jeannei Arterburn, St. Louis, for defendant/appellant.

William L. Webster, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for plaintiff/respondent.

GRIMM, Presiding Judge.

Defendant Robert Dukes appeals his convictions for second degree assault in violation of § 565.060,* armed criminal action in violation of § 571.015, and first degree trespass in violation of § 569.140. He claims the trial court erred in permitting two minors under the age of ten to testify and in submitting a jury instruction which he contends gave an impermissible definition of reasonable doubt. We disagree and therefore affirm his conviction.

Defendant also challenges the motion court's dismissal of his Rule 29.15 motion as untimely. He contends his motion was timely filed. We disagree and affirm.

### I. Background

Defendant had an on-again, off-again romantic relationship with victim for approximately twelve years. In this time, they had five children together. Occasionally, defendant lived with victim and the five children at their home.

The following events gave rise to the assault and armed criminal action charges. On July 26, 1987, defendant returned to victim's home between 4:00 and 5:00 a.m. According to victim, "He was high and me

---

* All statutory references are to RSMo 1986.

and all five of the children were in my bedroom in my bed and he was upset about that, so we all got up and went in their room. After that we argued." Apparently, defendant was angered by victim's request for him to stay away from her.

A fight then ensued. Victim testified, "[W]hen [defendant] finished with me I had a black eye, I was bruised up and I tried to get him off me...." Eventually, the children telephoned victim's mother and brother. They came over and ordered defendant to leave.

Defendant supposedly left, but actually just hid out downstairs. When victim's mother and brother left, victim locked her doors, and then she returned to her bedroom. All five children were in there with her.

However, about 7:30 a.m., defendant returned. According to victim, "[Defendant] pulled the [bedroom] doors apart, walked in, and had a small gun and was waving it around talking about this is what I got for your brother...." At this point, "the children were standing around [and] [t]hey were frantic." Victim tried to stop defendant. She said, "I walked over to [defendant], ... [and told him to] get [his] things and leave...." In response, defendant "took two steps backwards and fired." The bullet struck victim's right hip.

The police were called and arrived on the scene. Defendant claimed the shooting was accidental. Victim was unsuccessful in having charges brought against defendant. Although it took some time, victim ultimately moved to a different house away from defendant.

More than a year passed after the shooting. On October 25, 1988, the events giving rise to the trespass charge occurred. At 5:20 a.m., defendant went to victim's new address. Victim heard what sounded like "hard kicks on [her] front door." She did not respond. At 7:30 a.m., she took the three oldest children to school, leaving the two youngest at home.

Returning to her home, she was afraid to go back in, so she called the police. The

police searched the house and did not find anything. So the officer left the house.

Soon after, the two youngest children informed victim that defendant was hidden in the house and he had a "big old gun." Victim noticed that certain things were not the way she had left them, so she went outside and informed the police officer that defendant was in the house.

About this time, victim saw defendant come out the side of her house and then he "took off running." The officer gave chase and caught defendant.

## II. Dismissal of Rule 29.15 Motion

■ Defendant's first claim of error concerns the motion court's dismissal of his Rule 29.15 motion for post-conviction relief. He claims the dismissal was error because even though his Rule 29.15 motion was not filed within thirty days from the date of filing of his *uncertified* trial transcript, it "was filed within thirty days of the date of filing of a *certified* trial transcript." (emphasis added).

When, as here, a movant has a direct appeal pending, a Rule 29.15 motion for post-conviction relief must be "filed within thirty days after the filing of the transcript in the [direct] appeal." Rule 29.15(b). "Failure to file a motion within the time provided by this Rule 29.15 shall constitute a complete waiver of any right to proceed under this Rule 29.15." *Id.*

Our file reveals the transcript of movant's trial was filed on July 23, 1990. Thus, he had until August 22 to file his motion. However, the motion was not filed until October 2, more than one month past the deadline for filing.

The transcript movant filed on July 23 lacked the signature of the court reporter who prepared it. Thus, the transcript was not in accord with Rule 30.04(g) which states, "The transcript shall be certified by the court reporter as a true and accurate reproduction of the proceedings transcribed."

This court's clerk informed movant's counsel of this omission. On September 13, our court received the court reporter's certificate.

The issue presented is whether, for the purposes of Rule 29.15(b), the date of filing of the transcript is July 23 or September 13. If the date of filing is July 23, then the motion court properly dismissed the motion as untimely.

Rule 29.15 was adopted to avoid delays in processing prisoner's claims and to prevent litigation of stale claims. *Day v. State*, 770 S.W.2d 692, 693 (Mo. banc 1989). Under Rule 29.15(b), if an appeal of the criminal conviction is not taken, the motion must "be filed within ninety days of the date the person is delivered to the department of corrections."

However, if an appeal of the criminal conviction is taken, a movant is given until thirty days after the transcript is filed to file a Rule 29.15 motion. This additional time is granted so a movant, or a movant's attorney, may examine the transcript for grounds for vacating, setting aside, or correcting the judgment or sentence. *See,* Rule 29.15(d).

Here, the transcript was available for examination when it was filed on July 23. The failure of the court reporter to certify the transcript would not affect movant's examination of the transcript to ascertain grounds for relief. Further, if the court reporter's failure to certify was found to be sufficient to extend the time for filing the motion, the Rule 29.15 "valid and mandatory" time limitations could be compromised.

Finally, as a sidelight, we observe movant's last motion to file transcript on appeal out of time asked leave to file the transcript on July 23. Leave was granted, and the transcript was filed. If the transcript was not considered filed on July 23, it could be argued movant's direct appeal should be dismissed for failure to file transcript, as no further leave was sought or granted.

Movant did not file his motion for post-conviction relief within thirty days following the filing of his transcript. Thus, the motion court did not err in dismissing movant's motion. Point denied.

The motion court's dismissal of the Rule 29.15 motion is affirmed.

### III. Son's Testimony

In his second point on appeal, defendant alleges it was trial court error to call victim's eight-year-old son to testify because "a child under the age of ten years is presumed to be incompetent as a witness [and son] was six years at the of the incident and two years had passed and where the trial court failed to conduct a voir dire examination of [son] and the State presented no evidence to establish competency before permitting [son] to testify." He claims this violated his right to a fair trial guaranteed by the "Fifth and Fourteenth Amendments to the United States Constitution and article I, section 10 of the Missouri Constitution."

We first note that defendant did not object to son being called as a witness. Nor was his present point mentioned in his motion for a new trial. This point is not preserved, thus we review only for plain error.

At trial, son was called to testify regarding the events surrounding victim's shooting. He testified that he was present when "daddy came up ... with a gun" and shot his mother.

Section 491.060(2) provides that "[a] child under ten years of age, who appears incapable of receiving just impressions of the facts respecting which he is examined, or of relating them truly" shall be incompetent to testify. Our supreme court found this statute "creates a rebuttable presumption that a child under ten years of age is incompetent to testify." *State v. Feltrop*, 803 S.W.2d 1, 9 (Mo. banc 1991). *Feltrop* recognizes four abilities and capacities the child must have. *Id.* at 10. The determination of competency is left to the discretion of the trial court and is reversible only for abuse of discretion.

Plain error is "limited in its application to cases where there is a manifestation and showing that injustice or miscarriage of justice will result if plain error is not invoked." *State v. Fogle*, 743 S.W.2d 468, 470 (Mo.App.E.D.1987). That is not the case here. Point denied.

### IV. Daughter's Testimony

In his third point on appeal, defendant alleges that "[t]he trial court abused its discretion in determining that [victim's] five-year-old [daughter] was competent to testify and permitting her to testify [because] a child under the age of ten years is presumed to be incompetent as a witness [and the] State failed to rebut the presumption of incompetency through the pre-trial voir dire examination of [daughter] or [through] any other evidence."

Daughter's testimony was limited to what happened on October 25, 1987, when defendant was caught hiding in victim's home. She testified that defendant was in the home and had a gun.

Although defendant objected to daughter's competency prior to her testimony, this point was not included in his motion for new trial. The point is not preserved and we review only for plain error.

The attorneys and trial court conducted a lengthy voir dire examination of daughter, which consumes 18 pages of the trial transcript. We have examined her testimony and find no abuse of trial court discretion in determining daughter was competent to testify. Point denied.

### V. Jury Instruction

In his fourth point, defendant contends he was denied due process of law by the use of the jury instruction defining reasonable doubt as proof which leaves the jury "firmly convinced" of a defendant's guilt. He claims that this definition "reduces the State's burden below that required by due process...."

This issue was addressed and denied by our supreme court in *State v. Antwine*, 743 S.W.2d 51, 62–63 (Mo. banc 1987). Point denied.

The judgment of the trial court is affirmed.

SATZ and CRANDALL, JJ., concur.