STATE of Missouri, Respondent,

v.

Judson BRAY, Appellant.

Judson BRAY, Appellant,

v.

STATE of Missouri, Respondent.

Nos. WD 42771, WD 44094.

Missouri Court of Appeals,
Western District.

Oct. 8, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 26, 1991.

Raymond L. Legg, Columbia, for appellant.

William L. Webster, Atty. Gen., Joseph P. Murray, Asst. Atty. Gen., Jefferson City, for respondent.

Before LOWENSTEIN, C.J., FENNER, P.J., and ULRICH, J.

FENNER, Presiding Judge.

Appellant, Judson Bray, appeals his conviction for second degree murder and the denial of his motion to vacate his conviction and sentence pursuant to Rule 29.15.

On appeal, Bray does not challenge the sufficiency of the evidence. However, it is necessary to recite the evidence herein as it pertains to Bray's first of four points raised on appeal, which charges plain error in the trial court's failure to submit a self-defense instruction.

The trial court is obligated to submit a self-defense instruction if the issue is supported by the evidence, viewed in the light most favorable to the defendant. *State v. Strother*, 807 S.W.2d 120, 122 (Mo.App. 1991) (citation omitted). Thus, the evidence at trial viewed from the foregoing standpoint revealed the following.

Judson Bray and the victim, Bill Leyerle, owned adjoining properties. Access to the properties was obtained by way of a single driveway. Bray and Leyerle had been involved in an ongoing dispute for several months prior to July 31, 1989, over use of the driveway. Leyerle and Bray had previously been involved in litigation as a result of the issuance of a special use permit by the Lafayette County Commission to Leyerle, allowing him to operate a campground on his property.

On July 31, 1989, at about 2:30 p.m., Bray and Leyerle had a fight. Prior to the fight, Leyerle had walked toward Bray's house, shaking his fist. Leyerle also drove by Bray's property yelling and making obscene gestures at Bray. Leyerle stopped in the middle of the road in front of Bray and yelled, "I'm going to whip your ass." Leyerle got out of his truck, approached Bray and began clawing at Bray's face. Leyerle knocked Bray to the ground. Bray then hit Leyerle on the side of the head, but Leyerle again came at Bray and began clawing at the back of Bray's head. A passing driver yelled at Leyerle about having his truck in the middle of the road, after which Leyerle got back into his truck and yelled at Bray that he would have him arrested. Leyerle filed a complaint with the police, reporting that Bray had hit him and broke his glasses.

A second altercation occurred that evening around 6:00 p.m. Bray came out of his house and saw Leyerle standing at the end of a fence that divided the mens' properties. Bray approached Leyerle and Leyerle told him "I'm going to whip your ass every time I see you." Leyerle then began walking toward Bray. Bray picked up a piece of wood and struck Leyerle two or three times, driving Leyerle back onto his own property. After he was driven back onto his own property, Leyerle stopped and again told Bray that he was going to "whip his ass." Leyerle told Bray that he had been trying for eighteen months to drive him off his land and this time he would succeed. Leyerle began to walk toward his truck and called Bray a "dirty son-of-a-bitch."

Bray approached Leyerle and yelled "Don't you stand there and call me a dirty son-of-a-bitch after all you have done to me and my wife." Leyerle began to walk away and Bray returned to his property. Leyerle then yelled at Bray that he was "going to get an equalizer" and was "going to start carrying a gun." Leyerle went to his truck and then to a camping trailer on his property, where Bray believed Leyerle kept a rifle or shotgun.

Bray went back into his house, obtained a .357 magnum pistol and walked back outside. Leyerle was in his truck. He got out of his truck and started walking toward Bray. As Leyerle walked toward Bray, Bray fired five shots, striking Leyerle five times.

Bray called the Lafayette County Sheriff's Department at approximately 6:40 p.m., stating he had just killed a man.

As previously stated, Bray maintains in his first point that the trial court commit-

ted plain error in failing to submit a self-defense instruction.

■ The right of self-defense is a person's privilege to defend himself against personal attack. *State v. Chambers*, 671 S.W.2d 781, 783 (Mo. banc 1984). Deadly force may be used in self-defense only when the following elements are present:

(1) an absence of aggression or provocation on the part of the defender;

(2) a real or apparently real necessity for the defender to kill in order to save himself from an immediate danger of serious bodily injury or death;

(3) a reasonable cause for the defender's belief in such necessity, and

(4) an attempt by the defender to do all within his power consistent with his personal safety to avoid the danger and the need to take a life. *Id.* (citation omitted).

Further, instructional error will amount to plain error only if the trial court has so misdirected or failed to instruct the jury on the law of the case as to cause a manifest injustice. *State v. Ware*, 770 S.W.2d 249, 251 (Mo.App.1989).

■ Careful review of the record does not reveal that a self-defense instruction was warranted. At the time Leyerle was shot, he was on his own property. Bray admitted that at the time he shot Leyerle, that Leyerle was not carrying any handgun or rifle. Bray also admitted that Leyerle had never pointed a gun at him nor had Leyerle ever confronted him with a knife or any other kind of weapon.

Bray testified that once he had returned to his house, it was not necessary for him to subsequently leave the house with a gun. In light of the required elements previously set forth, the evidence does not support a finding of a real or apparently real necessity for the defender, herein Bray, to kill in order to save himself from an immediate danger of serious bodily injury or death. *Chambers*, 671 S.W.2d at 783.

■ Nor does the evidence support a finding that Bray, the defender, did all within his power consistent with his personal safety to avoid danger and the need to take a life. *Id.* This is so, due to the fact that Bray had retreated from the altercation, entered his home, obtained the gun and returned to the altercation to kill Leyerle. When this occurred, as argued by the state, Bray had become the aggressor. If a defendant continues or renews an altercation when he had an opportunity to abandon or decline further, he becomes the aggressor, although he was not at fault in the original struggle. *State v. Hajek*, 716 S.W.2d 481, 483 (Mo.App.1986). Under these circumstances, self-defense is unjustified. *Id.* There was no manifest injustice in the trial court's failure to *sua sponte* submit a self-defense instruction.

Point one is denied.

■ In his second point, Bray maintains that the trial court abused its discretion by admitting photographic exhibits depicting the victim's condition because the probative value of said photographs was outweighed by their prejudicial effect, as the photographs were cumulative, repetitious, gruesome and unduly inflammatory. The complained of photographs are of the gunshot wounds suffered by Leyerle.

Bray acknowledges that the trial court has broad discretion to admit photographs. *State v. Feltrop*, 803 S.W.2d 1, 10 (Mo. banc 1991). Photographs, although gruesome, may be admitted where they show the nature and location of wounds, where they enable the jury to better understand the testimony and where they aid in establishing an element of the state's case. *Id.* Photographs are generally admissible if they are relevant to a material issue. *State v. Murray*, 744 S.W.2d 762, 772 (Mo. banc 1988), *cert. denied*, 488 U.S. 871, 109 S.Ct. 181, 102 L.Ed.2d 150 (1988).

None of the complained of photographs are particularly gruesome or inflammatory such that their exclusion was warranted. Even if the photographs were found to be gruesome or inflammatory, if they are relevant they may be admitted into evidence unless the situation is so unusual that the extent of the prejudice overrides the photographs' probative value. *Murray*, 744 S.W.2d at 772.

The photographs herein were relevant to show the location of the wounds suffered by Leyerle. They were therefore, properly admitted.

Point two is denied.

Bray's third and fourth points challenge the motion court's denial of his Rule 29.15 motion for post-conviction relief. Bray filed a *pro se* Rule 29.15 motion on April 5, 1990. Post-conviction counsel was subsequently appointed and an unverified amended motion was filed on June 4, 1990. The motion court dismissed the amended motion, finding the failure to sign the document to be jurisdictional in nature. Since the amended motion had not been signed, the motion court found it lacked jurisdiction as to that motion.

The motion court then proceeded with an evidentiary hearing on Bray's *pro se* motion. At the hearing, Bray was questioned by his attorney with regard to the amended motion. The following colloquy occurred:

Q. [Movant's Counsel] ... I will now show you the First Amended Motion. Do you recognize that document, Mr. Bray?

A. [Movant] Yes, I do, sir.

Q. Have you seen that document before?

A. Yes.

    *    *    *    *    *    *

Q. When was the first time you saw that document?

A. June the 1st, I believe.

Q. Of which year?

A. Of this year, 1990.

Q. And did you discuss the contents of this document with me?

A. Yes, I did.

Q. Did you at that time sign this document?

A. No. No, I didn't.

Q. Since that date have you had an opportunity to look through this document?

A. Yes, I have.

Q. And does this document contain every ground known to you for granting relief in this cause of action?

A. I don't believe it contains every ground. That's—Mr. Legg, that's the reason I didn't sign it at that time.

Q. Okay. As I've explained, at this time do you understand that the allegations that are contained in this document are the only allegations you can proceed upon?

A. Yes, I do.

    *    *    *    *    *    *

Q. Do you understand if there are any grounds or allegations that are not contained in this document at this time that you currently know about, that those grounds are waived for relief in this cause of action?

A. That they will be waived?

Q. Do you understand that?

A. Yes.

Q. Okay. And knowing that do you swear that this document is true and accurate and contains all of the grounds that have been explained to you that are possible for—

A. I will agree with the contents of that, that they are true and correct, Mr. Legg, but I do not believe that they are all the grounds.

In its findings of fact, entered after the hearing, the motion court noted that "Movant not only failed to sign and verify the amended motion, but also intentionally refused to sign the amended motion upon presentment to him by his counsel on or about June 1, 1990, as documented by the affidavit of counsel filed with the amended motion."

In the present situation, the amended motion was filed within the requisite time frame. The problem here lies with the requirement that the amended motion be properly verified in accordance with Rule 29.15(f), which provides, in pertinent part:

(f) **Amended Motion–Form, Time for Filing–Response by Prosecutor.** Any amended motion shall be verified by movant and shall be filed within thirty days of the date counsel is appointed or the entry of appearance by counsel that is not appointed. The court may extend the time for filing the amended motion

for one additional period not to exceed thirty days....

■ Bray consistently refused to sign the amended motion, but now apparently maintains that although he admitted at the evidentiary hearing that the amended motion did not contain every ground for relief, he agreed that the contents were true and correct, thus sufficing to be proper verification.

In *Foster v. State*, 809 S.W.2d 863, 865 (Mo.App.1991), the Eastern District was confronted with a situation where an amended 29.15 motion was filed by counsel, but was not properly verified. The court therein held that "even though filing the amended motion within the extended time granted by the motion court may be timely, movant cannot circumvent the requirement that he verify the amended motion." *Id.* The court noted that failure to verify an amended motion does not invoke the jurisdiction of the circuit court and renders the motion a nullity. *Id.* Because the amended motion was "not signed or *verified in any way*" by the movant, the court found the motion to be a nullity. *Id.*

As previously stated, Bray admitted, at the evidentiary hearing, under oath, that the contents of the amended motion were true and correct, but that the motion did not contain all the grounds known to him for granting relief, and stated that is why he had not signed the amended motion.

Technically, to verify means "to confirm or substantiate by oath or affidavit" and the term is used interchangeably with "sworn." Black's Law Dictionary, 1400 (5th ed. 1979). Thus, a document may be properly verified by various methods including, but not limited to affidavit or oath. Although a document need not be signed to be properly verified, subscribing, under oath before a duly authorized notary, is one of the most common forms of verification. However, whether Bray ultimately properly verified the amended motion is not dispositive herein.

Rule 29.15(f) imposes certain time constraints, within which a movant must comply and requires an amended motion to be verified and filed within a sixty day maximum time period. *State v. White*, 798 S.W.2d 694, 696 (Mo. banc 1990), *Foster*, 809 S.W.2d at 864. Even though the amended motion was filed within the requisite time period, it was not in the proper form required by Rule 29.15(f) as it had not been verified within the sixty day time period. A movant should not be allowed to fail in following the required procedure, i.e., file an amended motion within the requisite period of time, but refuse to verify the motion, and subsequently decide, for whatever reason, outside the sixty day time limit, to accept as true the averments in the motion. The motion court correctly found that it was without jurisdiction to hear the allegations presented in the amended motion.

■ The question thus remains as to whether Bray's *pro se* motion sufficiently raised a claim of ineffective assistance of trial counsel for failing to call a certain witness at trial. In his *pro se* motion, Bray alleged generally, that counsel was ineffective for failing to "call defense alibi witnesses that would have testified that movant acted only in defense of his premises." Bray now claims, on appeal, that counsel was ineffective for failing to call Rich Warren who would have testified consistent with Bray's version of the fight that took place between Bray and Leyerle during the afternoon of July 31, 1989.

Even assuming that Bray's *pro se* motion sufficiently raised a claim in this regard, the burden would be on Bray to show that there is a reasonable probability that, but for his counsel's unprofessional errors, the outcome would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–688, 104 S.Ct. 2052, 2064–2065, 80 L.Ed.2d 674 (1984). At best, Warren would have corroborated Bray's testimony which Bray argues supports his theory of self-defense. However, as previously stated, in point one, self-defense was not a viable theory since Bray, by retreating to his house, obtaining a gun and returning to the altercation, became the aggressor.

Under the circumstances, counsel would not have been found ineffective for failing to call Warren as a witness.

In view of the foregoing, Bray's conviction and the denial of relief pursuant to Rule 29.15 are affirmed.

All concur.