STATE of Missouri, Respondent,

v.

Bryan K. CREWS, Appellant.

Bryan K. CREWS, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 60731, 62538.

Missouri Court of Appeals,
Eastern District,
Southern Division.

April 6, 1993.

Craig A. Johnston, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Michael J. Spillane, Asst. Atty. Gen., Jefferson City, for respondent.

CRIST, Judge.

Defendant appeals from his convictions for first degree murder and armed criminal action, for which he was sentenced to concurrent terms of imprisonment of life without parole and five years.

On Saturday, October 20, 1990, Victim was found dead in his house by his brother. His body was lying on his bed covered by a bedspread up to his shoulder with a housecoat on top of the bedspread. Victim had suffered four blows to the head with a blunt instrument. Expert testimony stated the wound to the ear may or may not have been fatal, but any of the other wounds may have been individually fatal. Three hundred dollars was missing from Victim's wallet. He was 47–years–old and walked with a limp due to a recent stroke. Victim was 6 feet tall and weighed between 165 and 175 pounds.

Police interviewed Defendant four times. Initially, Defendant denied any wrongdoing in the death of Victim, who was his former stepfather. Defendant stated he hated Victim and had on a previous occasion put six stitches over Victim's eye for abusing his mother. Defendant was aware that his mother had black eyes when Victim was drinking. Later, Defendant admitted to bludgeoning Victim with an ax handle as he lay in bed after he had told police several conflicting stories.

Defendant's statement revealed the following occurred: Defendant went to Victim's residence to get some of his belongings. Victim had been drinking. After Defendant retrieved some of his belongings, Victim started talking about Defendant's mother. Defendant went from the front room towards the kitchen and suddenly Victim appeared with an ax handle in his hand. Victim swung the ax handle at Defendant, hitting him four or five times. Defendant finally caught the handle with his hand and took it away from Victim. Defendant then hit Victim in the head. Victim kept coming at Defendant so Defendant hit him again and Victim "went down" with blood coming down the left side of his face. Defendant then helped Victim get into his bed. Defendant then "lost it" because Victim said "somethin' about all the shit he put [Defendant] an (sic) [his] mom through." Defendant did not know how many times he hit Victim in bed. Defendant stated he did not mean or plan to kill Victim; he was just scared. In a later interview with police, Defendant admitted he had talked with his mother about buying more speakers. He also admitted his mother had told him about a life insurance policy which still listed Defendant's mother as the beneficiary.

Per directions from Defendant, police recovered an ax handle with blood matching Victim's blood type on it. Hair on the ax handle also matched that of Victim. Tennis shoe prints outside Victim's residence matched Defendant's tennis shoes.

Defendant asserts reversible error in that the trial court refused to give the pattern instruction on self-defense (MAI–

CR3d 306.06) offered by Defendant. Defendant was entitled to the self-defense instruction if the issue was supported by the evidence when viewed in a light most favorable to Defendant. *State v. Weems,* 840 S.W.2d 222, 226[2] (Mo. banc 1992). For Defendant to be entitled to use deadly force in self-defense, four elements must be met:

> (1) an absence of aggression or provocation on the part of the defender, (2) a real or apparently real necessity for the defender to kill in order to save himself from an immediate danger of serious bodily injury or death, (3) a reasonable cause for the defender's belief in such necessity, and (4) an attempt by the defender to do all within his power consistent with his personal safety to avoid the danger and the need to take a life.

*Id.* at 226[3]. If substantial evidence exists of self-defense, the trial court must instruct the jury on it. *State v. Peek,* 806 S.W.2d 504, 505[2] (Mo.App.1991).

A careful review of the record reveals a self-defense instruction was not justified. Defendant stated he did hit Victim with the ax handle one or two times only after Victim attacked him. However, Defendant then helped Victim into his bed and continued the attack when he had an opportunity to abandon it. Defendant asserts expert testimony reveals Victim may have already been dead when Defendant renewed the attack in the bedroom. Expert testimony revealed a blow to the ear may or may not have been fatal, but any of the other blows individually could have been fatal. Therefore, Defendant contends his continuation of the attack was inconsequential.

However, Defendant's own statement to the police reveals Defendant believed Victim was alive after the initial attack. He stated, "Yes I helped him in his bed." Defendant further stated he continued the attack because Victim "said somethin' about all the shit he put [Defendant] an (sic) [his] mom through." Defendant's own statements reveal Defendant became the aggressor and is not entitled to a self-defense instruction. *See, State v. Bray,* 818 S.W.2d 291, 293[3] (Mo.App.1991);

*State v. Turner,* 810 S.W.2d 92, 94[3] (Mo. App.1991); and *State v. Hajek,* 716 S.W.2d 481, 483[5] (Mo.App.1986). Defendant admitted bludgeoning the Victim as he lay in bed, not because he was defending himself against Victim, but because he "lost it" after Victim said something about him and his mother. Point denied.

■ For his second point, Defendant asserts the evidence was insufficient to support his convictions in that the evidence failed to establish beyond a reasonable doubt Defendant acted "knowingly after deliberation" when he caused the death of Victim. We review the evidence in the light most favorable to the jury's verdict merely to determine if there is sufficient evidence to support Defendant's conviction. *State v. Feltrop,* 803 S.W.2d 1, 11[22] (Mo. banc 1991), *cert. denied,* —— U.S. ——, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991).

"A person commits the crime of murder in the first degree if he knowingly causes the death of another person after deliberation upon the matter." Section 565.020.1, RSMo Supp.1992. " 'Deliberation' means cool reflection for any length of time no matter how brief...." Section 565.002(3), RSMo 1986. "The willfulness, deliberation and premeditation required for a conviction may all be inferred from and established by the circumstances surrounding the homicide." *State v. Grubbs,* 724 S.W.2d 494, 498[3] (Mo. banc 1987), *cert. denied,* 482 U.S. 931, 107 S.Ct. 3220, 96 L.Ed.2d 707 (1987); *See also, Feltrop,* 803 S.W.2d at 11–12[23, 24]. Defendant had told his mother he wanted more speakers. Three hundred dollars was missing from Victim's wallet. There was a life insurance policy payable to mother, which Defendant had discussed with mother. The blood splatters indicated Victim was bludgeoned as he lay in bed. Defendant stated he hated Victim. He had previously put six stitches above Victim's eye. He told the police when he was hitting Victim with the ax handle he was thinking about everything Victim ever did to his mother. He also stated he further hit Victim after putting him in bed. The evidence in this case sup-

ports an inference of deliberation and cool reflection. Point denied.

■ In Point III, Defendant asserts reversible error in the denial of his challenge for cause of venireperson Mary Bess. Mary Bess initially stated she thought prior murders of a friend and her cousin would bother her to the point where she could not be fair. However, she later unequivocally stated she could be fair in this case. We find no abuse in the trial court's discretion in accepting Mary Bess because of her unequivocal assertion she would be fair. *State v. Walton*, 796 S.W.2d 374, 377[4–6] (Mo. banc 1990); *State v. Nalls*, 835 S.W.2d 509, 513[1, 2] (Mo.App.1992); and *State v. Clark*, 671 S.W.2d 374, 375[1–3] (Mo.App.1984). Point denied.

■ For Point IV, Defendant objects to the introduction of a gruesome photograph taken during the autopsy of Victim. It was a closeup photograph of Victim's wounds and was relevant to show Victim's cause of death. The doctor who performed the autopsy used the photograph to explain her testimony. Under the broad discretion of a trial court in admitting photographic evidence, there was no error in this case. *State v. Mease*, 842 S.W.2d 98, 108–09 (Mo. banc 1992); *Weems*, 840 S.W.2d at 229[10, 11]; *Bray*, 818 S.W.2d at 293[5]; and *Feltrop*, 803 S.W.2d at 11[20]. Point denied.

In Point V, Defendant argues the trial court erred in giving Instruction No. 4, patterned after MAI–CR3d 302.04, defining reasonable doubt with the language "firmly convinced." The Supreme Court of Missouri has held this instruction merely explains the charge to the jury and does not violate the mandate of *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). *State v. Griffin*, 818 S.W.2d 278, 282[7] (Mo. banc 1991). We are bound by this decision. Point denied.

For Points VI and VII, Defendant asserts he is entitled to plain error review for remarks made by the prosecutor during closing argument. We have considered both points and choose to deny review thereof. Our Supreme Court has held a defendant waived his claim of error by failure to preserve. *State v. McMillin*, 783

S.W.2d 82, 97–98[31] (Mo. banc 1990), *cert. denied*, 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 179 (1990); *See also, State v. Jordan*, 834 S.W.2d 900, 901[1] (Mo.App.1992); *State v. Root*, 820 S.W.2d 682, 688[13] (Mo. App.1991). Point denied.

For his final point, Defendant asserts error in the denial of his Rule 29.15 motion without an evidentiary hearing for his lawyer's failure to file a motion to suppress his statements to the police. Our review of the trial court's decision is to determine whether it is clearly erroneous. Rule 29.-15(j). To be entitled to an evidentiary hearing, Defendant must allege facts not refuted by the record, which if true would warrant relief. *State v. Jennings*, 815 S.W.2d 434, 448–49[30, 31] (Mo.App.1991); Rule 29.15(g). Defendant's allegations were refuted by the record. The statements were tape-recorded. Defendant was clearly advised of his constitutional rights, voluntarily waived them, and agreed to talk to the officer. The confession was admissible, and it would have been a pointless exercise in futility for defense counsel to file a motion to suppress. *See, State v. Lytle*, 715 S.W.2d 910, 915[10] (Mo. banc 1986); and *State v. Wilson*, 755 S.W.2d 707, 709[1–5] (Mo.App.1988). Therefore, Defendant was not prejudiced by his attorney's failure to file an unwarranted motion to suppress. As such, the trial court was not clearly erroneous in denying Defendant's 29.15 motion without an evidentiary hearing. Point denied.

Judgment affirmed.

KAROHL, C.J., and REINHARD, J., concur.