**STATE of Missouri, Respondent,**

v.

**Richard NOVAK, Defendant–Appellant,**

**Richard NOVAK, Movant–Appellant,**

v.

**STATE of Missouri, Respondent.**

Nos. 67200, 69467.

Missouri Court of Appeals,
Eastern District,
Division Five.

May 20, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 14, 1997.

Application to Transfer Denied
Aug. 19, 1997.

Michael A. Gross, St. Louis, for appellant.

Jeremiah W. Nixon, Breck K. Burgess, Jefferson City, for respondent.

CHARLES B. BLACKMAR, Senior Judge.

Once again we must deal with the tragic effects of a senseless killing related to alcohol, drugs, and racial tensions. A jury found Richard Novak guilty of murder in the first degree (§ 565.020, RSMo 1994); armed criminal action (§ 571.015, RSMo 1994); and ethnic intimidation in the first degree (§ 574.090, RSMo 1994), receiving a life sentence without possibility of probation or parole for the murder conviction. He further received three years for the armed criminal action conviction, and five years for the ethnic intimidation conviction, to be served concurrent with the murder sentence. He appeals the convictions and the denial of post-conviction relief sought pursuant to Rule 29.15. We affirm. We state the essential facts that the jury could have found in support of the verdict without mention of contrary testimony.

Isaias Loza hosted a late-night party on August 6, 1993 at his apartment in South St. Louis, where beer flowed freely and drugs were used by some. Most of the guests were white, but one of Loza's friends brought an African–American man, Danny Gillespie, to the party. Loza saw Gillespie talking to a white woman and, after some words, ordered both of them to leave. They accepted the suggestion, but Loza ran after them and "sucker punched" Gillespie. The two then fought on the sidewalk and into the street. When Loza seemed to be having the worst of the fight, some of his friends jumped in to help. Loza then beat Gillespie's head on the sidewalk. The evidence does not show that the defendant was one of the helpers, but the jury could infer that he was aware of the fight.

Some guests flagged down a car in which two African–American men were riding, and sought help for Gillespie. The men got out of the car and asked what was going on. Loza called for a gun. The defendant and David Been then ran back to Loza's apartment. Been took a loaded shotgun from a closet shelf and the two returned to the scene of the fight. When the men who had been riding in the car saw the shotgun they got back in the car and drove off. Gillespie started running across a parking lot. Been handed the gun to the defendant who handed it to Loza, saying "kill that nigger." Loza fired a shot at the departing car. He then turned and fired at the fleeing Gillespie. Two pellets struck Gillespie in the back of the head, inflicting fatal wounds.

*The Motion for Recusal*–Points I and II.

On the morning of the trial, July 5, 1994, the defendant filed an unverified motion seeking the recusal of the trial judge. He based his motion on remarks made by the trial judge in the presence of counsel in chambers on May 3, 1994. No transcript of the in chambers proceeding has been filed and we may assume that the court reporter was not present.

After filing the motion for disqualification counsel gave his account of the statements he complained of, asserting that the judge had said that "he did not like the defendant; that the defendant was a liar or incompetent or both; and that the trial court would do everything possible to convict the defendant without breaking the law." The court expressed doubt that he had made this last statement, but acknowledged that he might have made the other statements. The defendant did not ask for a hearing before another judge on the motion for recusal, and the court did not direct such a hearing. The trial judge declined to recuse himself, asserting the untimeliness of the motion.

The question of possible prejudice of the trial judge is a serious matter. A judge who senses prejudice such as might interfere with impartial judgment is obliged to recuse, and a motion seeking to disqualify the judge for reasons of prejudice may be presented even though the time for seeking an automatic change of judge has passed. *See State ex rel. Wesolich v. Goeke,* 794 S.W.2d 692 (Mo. App.1990). No procedure is prescribed by rule, but this court's opinion in *State ex rel Wesolich* sets forth an approved procedure, including a requirement that factual issues be heard by a judge other than the one

whose impartiality is questioned. *Id.* at 697. The opinion is silent as to time limits.

■ We conclude that the judge did not have to accept this late motion, which might involve either seeking another judge or delaying the trial, with attendant problems for witnesses and prosecutors.

The colloquy arose after the defendant's counsel, on May 2, 1994, appeared for the trial setting and advised the court that he had some alibi witnesses who had not been previously disclosed. The judge had already been informed that the defendant would claim that he was intoxicated to such a degree that he remembered nothing of the events surrounding the killing. The state objected to the late suggestion of alibi witnesses, and the court heard testimony from witnesses, including appellant's two sisters and his mother, that the defendant had told them about alibi witnesses. Yet counsel represented that he did not know about the witnesses until the day of trial. Thus the trial judge's provocation could be attributed to things he had learned in proceedings of the present case. It is often said that matters occurring in the course of a case over which the challenged judge is presiding do not give grounds for disqualification. *State v. Hunter,* 840 S.W.2d 850, 866 (Mo. banc 1992); *State v. Christeson,* 780 S.W.2d 119 (Mo.App.1989).

The court, furthermore, continued the trial setting to allow for further investigation, thus giving the defendant the opportunity to produce alibi evidence. It is of interest that no alibi witness was called at trial.

The trial judge should have been more careful in his comments. We conclude, however, that the words allegedly used, in the setting in which they were uttered, are not such as to compel recusal. The court was not obliged to abort the trial setting to allow another judge to rule on the allegations.

Defense counsel had been aware of the grounds he asserted for recusal for over two months. He said that he had drafted his motion the day after the colloquy with the judge, and that he refrained from filing it because he had another criminal case before the same judge and did not want to provoke his wrath. This excuse is not sufficient. It is often necessary to risk the presiding judge's displeasure in representing one's client.

If we were to hold that the defendant's allegations, presented when they were, required the convening of a hearing before another judge, then the door would be open for criminal defendants to avoid trial settings by challenging the presiding judge. Witnesses in criminal cases are often fickle or transitory, and defendants might reap benefit from delay. There is no reason why allegations of bias or prejudice should not be made reasonably soon after the facts are known and, in any event, in sufficient time that a trial setting is not delayed. Had the suggestion for recusal been made promptly before the trial date the judge might have transferred the case to another criminal division, but such transfers are not always easy on the morning of trial. We conclude that the court did not err in proceeding with the case.

*State v. Christeson,* 780 S.W.2d 119 (Mo. App.1989) is not inconsistent with our holding. The motion there was so patently lacking in merit that the trial judge summarily overruled it and this court affirmed. No consideration was given to the question of timeliness.

### *The Display of the Tattoo*–Point III

■ The court required the defendant to bare his arm to display a "white pride" tattoo to the jury. The state asserts that claims of error are not properly preserved. We conclude that there was no error. The evidence shows a senseless killing, accompanied by racial epithets. There is evidence that the defendant participated in the killing and made racist remarks. Evidence of motive is appropriate in a case of this kind. *O'Neal v. Delo,* 44 F.3d 655, 660–61 (8th Cir.1995); *State v. Coutee,* 879 S.W.2d 762, 767 (Mo. App.1994). The judge could properly conclude that the evidentiary value outweighed the possible prejudicial effect. Any claim of prejudice is attenuated, furthermore, because the tattoo was mentioned on voir dire and in testimony which was not objected to.

### The Juror Challenge–Point IV

■ During voir dire an African–American juror said that evidence of a "white pride" tattoo on the defendant's arm would prove that the defendant was a "racist" and would interfere with his ability to serve as a juror. He was then questioned extensively by the prosecutor and by the court. The juror stated that he had not determined the defendant to be guilty, even though he didn't like the "white pride" tattoo, which he said "may or may not" be something he would consider. He also said that the tattoo did not make the defendant a murderer, and that he would require the prosecutor to prove the case. In response to a question by defense counsel he said that in his mind the defendant was "pretty much innocent," and then that "he's innocent." He said that he "probably" could give the defendant a fair trial, and then that he could give him a fair trial. The judge overruled the defendant's challenge for cause. The defendant did not use a peremptory challenge to remove this juror, and he served on the trial jury.

For present purposes we shall assume without deciding that a defendant may predicate error in overruling a challenge for cause if the challenged juror is seated, even though § 494.480, RSMo 1994 would foreclose a claim of error if the jury had been peremptorily challenged. We conclude that there was no reversible error in the ruling. The juror's ultimate answer was that he could give the defendant a fair trial. The case thus differs from *State v. Wacaser*, 794 S.W.2d 190 (Mo. banc 1990), in which jurors stated that, in the event of a first degree murder conviction, they would consider only a death sentence. It is often wise for a trial judge to sustain a challenge for cause when his ruling might otherwise be questioned and when other potential jurors are available, as they usually are in the metropolitan courts, but the trial courts are afforded broad discretion and we are not persuaded that this discretion was abused. *See State v. Feltrop*, 803 S.W.2d 1, 7 (Mo. banc 1991), *cert. denied*, 501 U.S. 1262, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991).

### Deliberation–Point V

■ The defendant alleges that there was no showing of deliberation sufficient to support a conviction for murder in the first degree.

■ Under our decisions only brief deliberation is required to make a jury case. *State v. Crews*, 851 S.W.2d 56, 58 (Mo.App. 1993). Counsel commendably concedes that if the defendant accompanied Been to Loza's apartment to procure a shotgun, returned to the scene of the fight with Been, received the shotgun from Been, and handed it to Loza, saying at the same time "kill that nigger," all with the purpose of bringing death to Gillespie, there would be support for a finding of deliberation. He argues, however, that the evidence equally supports an inference of intent that the shot be directed at the two men who arrived to help Gillespie. The state, also commendably, concedes that, under the instructions, the jury could not transfer the intent to kill the two men to Gillespie.

We conclude, however, that the jury could find that the defendant sought to bring about the death of Gillespie. He was quite aware that there had been an altercation between Loza and Gillespie. His words about killing were singular. The men in the car were leaving the scene. The fact that Loza fired the first shot at the departing car is not inconsistent with the defendant's solicitation of Loza to kill Gillespie, or with his participation in the process by providing the loaded gun.

■ Our function is to determine what the jury could have found from the evidence. If the verdict is supported by substantial evidence it is not for us to say whether it is harsh, or whether other possible verdicts might have been returned. We conclude that, under the authorities, a submissible case of murder in the first degree was made.

### The 29.15 Motion–Point VI

The defendant complains that his appointed post-conviction counsel, without his knowledge or assent, introduced no evidence at the hearing on his 29.15 motion and agreed to a submission to the court on the record of the case. No attempt is made to demonstrate

the evidence that might have been introduced in support of the motion.

■ The record, furthermore, does not demonstrate "abandonment," as the defendant suggests. Counsel, after being appointed, prepared a lengthy amended motion. Most of the allegations of the 29.15 motion present arguments which are essentially legal. The motion judge entered detailed findings and conclusions, holding essentially that the matters of record in the case did not demonstrate legal error or ineffectiveness of counsel such as could be reviewed in a post-conviction proceeding. Ineffective assistance of counsel in a post-conviction proceeding is not a ground for reversing a judgment on a 29.15 motion. *Hunter,* 840 S.W.2d at 871.

■ Moreover, failure to call witnesses is not abandonment. *State v. Campbell,* 830 S.W.2d 475, 477–78 (Mo.App.1992); *Burton v. State,* 817 S.W.2d 928, 930 (Mo.App.1991). Counsel, of course, should take steps to keep the client informed, and should consult the client about important decisions, but one who asserts error has the burden of demonstrating prejudice, and this has not been done.

### Proceedings Following Retransfer

The case was certified to the Missouri Supreme Court at the time of the initial handdown, but that court retransferred it to this court without opinion. Counsel for appellant obtained leave to file a supplemental brief in which he asks us to consider three recent cases regarding alleged bias of the trial judge. In *Haynes v. State* 937 S.W.2d 199 (Mo. banc 1996) the trial judge excoriated the defendant after receiving guilty pleas. In *State v. Kinder,* 942 S.W.2d 313 (Mo. banc 1996), the defendant took exception to an inflammatory remark, not specifically directed at the defendant, which was made while the judge was campaigning for reelection. In neither case did the court find reversal necessary. In *State v. Smulls,* 935 S.W.2d 9 (Mo. banc 1996) the supreme court found that the trial judge made a remark during the course of the trial which indicated that he was not willing to take action required by law in the impaneling of the jury. The supreme court affirmed the conviction but ordered a new hearing of the penalty phase before another judge in order to determine whether corrective action was necessary. The point was timely raised in a motion to disqualify the judge from the 29.15 hearing, and not delayed as it was here. We adhere to our initial conclusion, for the reasons stated in the first section of our opinion.

The judgments are affirmed.

AHRENS, C.J., concurs.

CRANDALL, J., dissents in separate opinion.

CRANDALL, Judge, dissenting.

I dissent.

I believe the majority opinion to be contrary to the decision of this court in *State ex rel. Wesolich v. Goeke,* 794 S.W.2d 692 (Mo. App.1990).

I would reverse and remand.