**STATE of Missouri, Respondent,**

v.

**James Edwin PIPES, Appellant.**

**No. WD 50887.**

Missouri Court of Appeals, Western District.

Submitted Jan. 11, 1996.

Decided March 5, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 30, 1996.

Application to Transfer Denied June 25, 1996.

**350**

N. Scott Rosenblum, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jill C. LaHue, Asst. Atty. Gen., Jefferson City, for respondent.

Before HANNA, P.J., and SMART and ELLIS, JJ.

SMART, Judge.

James Edwin Pipes appeals from his conviction, after jury trial, for involuntary manslaughter, § 565.024, RSMo 1994,[1] and armed criminal action, § 571.015, RSMo 1994. Pipes was sentenced as a prior and persistent offender and given consecutive sentences of twenty years for involuntary manslaughter and ten years for armed criminal action. Pipes claims that the trial court erred: (1) by admitting a photograph of the victim's internal organs into evidence; (2) in not allowing surrebuttal testimony to contradict the testimony of witness Rodney Higgins; and (3) in refusing to admit evidence of the victim's prior violent acts. The judgment of the trial court is affirmed.

On April 23, 1994, James Edwin Pipes and Brad Terrell drove to the trailer where the victim, Anthony Manning, lived with his fiance, Tammy Sampo. Pipes and Terrell burst into the door of the trailer. Terrell was carrying a sawed-off shotgun. Manning pushed Pipes and Terrell out the door and Sampo immediately went to her room and called 911. At some point, Pipes and Manning struggled and Manning was stabbed in

---

1. All sectional references are to Missouri Revised Statutes 1994, unless otherwise indicated.

the heart with a knife. He also sustained a blunt trauma to the lower pelvic area. An autopsy revealed an extensive hemorrhage associated with a ruptured bladder.

Pipes testified at trial that Manning was killed in self-defense. He claimed that Manning attacked him and started "slinging" him around, although Pipes sustained no injuries in the alleged attack. He contended that Manning produced the knife and that he grabbed Manning's hand in an effort to keep Manning from getting the knife and stabbing him. At one point in his testimony, Pipes stated that Manning had stabbed himself. Pipes had no explanation for Manning's stomach injury.

### *Photographic Evidence*

In Point I, Pipes contends that the trial court erred in admitting, over objection, State's exhibit No. 39, a photograph of the victim's internal injuries, because the photograph's probative value was outweighed by its prejudicial impact. Pipes characterizes the photograph as "gruesome" and argues that the photograph was "wholly irrelevant to any element of the State's case...."

 A trial court possesses broad discretion in determining the admissibility of photographs and we will reverse only for an abuse of that discretion. *State v. Isa*, 850 S.W.2d 876, 890 (Mo. banc 1993). A photograph is deemed admissible where it tends to corroborate the testimony of witnesses, assists the jury in its understanding of the testimony or the facts, or proves an element in the case. *Id.* Although a photograph of a victim's body is not admissible for the sole purpose of arousing the emotion of the jury or prejudicing the defendant, *State v. Lay*, 896 S.W.2d 693, 697 (Mo.App.1995), it is admissible if relevant to material issues in the case, such as the nature and location of a victim's wounds. *State v. Gaston*, 897 S.W.2d 136, 139 (Mo.App.1995).

The following testimony was given by Dr. Adelstein:

Q. Okay. Now—now, on further examination of the internal abdomen area of the victim, Anthony Manning, what else did you observe, separate from the stab wound you just discussed?

A. When we observed, when we opened up the pelvic area of the body, the pelvic area being sort of below our waist, that the pelvic area was filled with clotted blood. And the anterior abdominal wall located above our pelvis, our pelvic area was, had blood in the wall itself, and that the bladder was ruptured and that a small amount of blood was also present around the kidney on the right side, about 25 cc's of blood. It was fairly sharply delineated at that point.

Q. What did you determine that injury as being consistent with?

A. That injury was most consistent with blunt trauma to the lower pelvic area.

Q. What's blunt trauma mean?

A. Being—being, being hit by some object that did not have sharp points on it.

Q. Okay. In your opinion, what would be a consistent object to produce that lower stomach injury?

A. A consistent object could have been a knee, it could have been a shoe, the flat part of a shoe.

Q. How would you characterize the amount of force necessary to produce such an injury as you observed on the body of Tony Manning?

A. It would have been a, a very powerful force.

Q. And what would you expect to be the effect on Tony Manning or an individual struck in that manner and sustaining a ruptured bladder and internal bleeding in that fashion?

A. It would be an injury that would induce incredible pain.

Q. But it's not fatal; is that correct?

A. It's not a fatal, the amount of blood there would be not enough to—it's a wound that people often sustain, sometimes in motor vehicle accidents, and it's survivable.

Q. Okay. Doctor, if you'll hang on just a minute.

MR. CRANE: Judge, can we approach?

THE COURT: You may.

(Counsel approached the bench and the following proceedings were had:)

MR. ROSENBLUM: I wanted to make my, make an objection for the record to the introduction of this picture, which would be State's Exhibit No. 39. It's—it appears to be a picture of various innards. It's very, very graphic and grotesque, and I think that any probative value in this case would be outweighed by the prejudicial effect this picture would have on the jury.

THE COURT: Your purpose?

MR. CRANE: Judge, that is the only photograph that we have that demonstrates this particular injury. It was an area that was indicated internally as opposed to externally, and I simply have no other way to show this location via photograph.

THE COURT: What's 40 going to be?

MR. CRANE: The diagram.

THE COURT: So you're pointing to what is the clotted blood here in the pelvic area?

MR. CRANE: Yes. This is the bleeding produced as a result of that blunt trauma. It's this area right here.

THE COURT: Objection will be overruled.

■ The photograph at issue in the instant case, which is similar to a photograph which would be used for medical education, is relevant in that it illustrates the testimony of Dr. Edward Adelstein, the pathologist who performed the autopsy on Manning. Dr. Adelstein testified that the injuries sustained by Manning, the rupture of the bladder and the internal bleeding, were the result of a very powerful force. The injuries were not apparent from external examination and the photograph was the only way that the injuries could be shown. Because the photograph is very graphic, it was illustrative of the testimony. The trial court did not abuse its discretion in admitting Exhibit No. 39. Point I is denied.

### Proposed Surrebuttal Testimony

In Point II, Pipes contends that the trial court erred in refusing to allow the testimony of Officer Michael Hayes in surrebuttal to testimony given by witness Rodney Higgins. Higgins lived in the trailer next door to the victim's trailer. He testified that he saw a red car pull up and saw the defendant at the vehicle; that he heard a loud noise that sounded like someone kicking a door or throwing something at a wall; that he saw Manning walk between the trailers and toward the front of the Manning trailer looking "real scared or worried or something"; that a few minutes later he saw Manning running and holding his side; that he saw the defendant; and that he went to help Manning. During cross-examination, the following exchange occurred:

Q. Okay. But do you recall describing what you observed to Officer Hayes?

A. Yes.

Q. You never mentioned anything about seeing Tony in this area?

A. I sure did.

Q. To Officer Hayes?

A. Yes.

Q. You're saying that you did to Officer Hayes?

A. Yes.

Q. That you saw him in between the trailers?

A. If it wasn't him, it was one of the other officers because I did see him there.

Q. Okay. But how about to Officer Hayes?

A. I'm sure I did. He asked me stuff more than once.

After the State rested, defense counsel wished to call Officer Hayes in surrebuttal to establish that Higgins did not mention that he saw Manning between the trailers. The trial court did not allow the surrebuttal because Officer Hayes had been finally excused and because the proposed testimony would not rebut anything. Pipes claims that this was error as Hayes' proposed testimony was probative as to Higgins' credibility. He claims that the action of the trial court prejudiced him because the testimony contradicted

his version of the incident. He also claims that he was prejudiced because the jury was allowed to hear that the victim was scared. We do not consider this latter point as it was not asserted in Pipes' offer of proof. *See State v. Fleer*, 851 S.W.2d 582, 595 (Mo.App. 1993).

The scope of rebuttal testimony is subject to the broad discretion of the trial court. *State v. Leisure*, 749 S.W.2d 366, 380 (Mo. banc 1988), *cert. denied*, 506 U.S. 923, 113 S.Ct. 343, 121 L.Ed.2d 259 (1992). We will reverse only upon finding an abuse of that discretion. *Id.* Review of Higgins' testimony reveals no abuse of discretion. Higgins was asked whether he told officer Hayes, an investigating officer, that he saw Manning between the trailers. Higgins testified he told the police. He thought that the officer he told was Hayes, but at one point stated that he could have told this to another officer. Then he said he was sure it was Hayes that he told. The proposed surrebuttal does not directly rebut the fact that Higgins saw Manning between the trailers, but rather rebuts his testimony that he reported this to a *specific* police officer, Officer Hayes.

In order to show an abuse of discretion in this regard, it would have been necessary for the defendant to make an offer of proof showing that Higgins failed to report to any investigating officer that he saw Manning between the trailers. This could have been done by introducing, as part of the offer of proof, copies of the investigative police reports. If such reports showed Higgins never mentioned these observations to the police at all, this may indeed have raised significant doubt as to his credibility, and it could have been an abuse of discretion to deny such surrebuttal. In this case, however, there is no showing of an abuse of discretion. The offer of proof in the instant case was not specific, and there is no way to tell what defense counsel specifically relies upon to make his assertion that Higgins' testimony was inaccurate. Defendant's offer appears in the record as follows:

> MR. ROSENBLUM: Well, I mean, you're not going to let me—can I make a record that I would want to offer him in surrebuttal?

THE COURT: To do what?

MR. ROSENBLUM: To establish that Rodney Higgins when he talked to him didn't mention anything about Tony Manning being between the trailers, that the only thing he saw, he heard a noise and saw him run right by.

MR. CRANE: It's a pretty generalized description of what the statement was.

THE COURT: What did he say? Let's see it. What are you pointing to?

MR. ROSENBLUM: I'm sorry. Okay. It starts here. And he talks about his observations, and then he stated, it goes on here, I'm trying to get to the point. Maybe it's up here. Okay. Here it is.

THE COURT: So what are you going to rebut? I'm sorry. There's nothing in that that rebuts anything. I mean, there may be something else in between, but there's nothing—

This dialogue preserves nothing for our review on appeal. Whatever document was used in this colloquy has not been provided to this court. Appellant has not shown any abuse of discretion. Point II is denied.

### Prior Violent Acts of Victim

Pipes argues in Point III that the trial court erred in refusing to admit evidence of the victim's prior violent acts and their impact upon him in order to corroborate his claim of self-defense. Out of the presence of the jury, Pipes testified that in 1982 or 1983, he was with the victim when the victim was "high" and "shooting up a house." He also testified that in 1988 he was partying with the victim and heard him say that "he was the toughest one" and "stuff like that." On cross-examination Pipes admitted that on the occasions in question in 1982 or 1983, Manning was not aggressive or violent toward him. He also conceded that Manning had not fought him or anyone else during the 1988 incident. Very little explication was given concerning the 1988 incident. Apparently, Manning, Pipes and several others were seated together in the home of Manning's grandmother. Manning fired a gun into the wall or floor. There was no testimony that this was intended as a threat-

ening or aggressive act. It may have been simply immature, destructive behavior or childish bravado, and everyone present may have thought it was funny at the time. We are not given any insight into these matters from the very limited description supplied the court in the offer of proof.

Pipes claims that the evidence is admissible under *State v. Waller*, 816 S.W.2d 212 (Mo. banc 1991). In *Waller*, the Missouri Supreme Court outlined the standard for admitting evidence of a victim's prior specific acts of violence. The acts sought to be introduced must be "reasonably related to the crime with which the defendant is charged." *Id.* at 216. The court held:

> The defendant must lay a proper foundation before the evidence can be admitted. Other competent evidence must have raised the question of self-defense. The defendant must show that he was aware of the specific act or acts of violence. The incidents must not be too remote in time and must be of quality such as to be capable of contributing to the defendant's fear of the victim. Where acts are too remote in time or of a quality substantially different from the act that the defendant accuses the victim of committing, the trial court may decline to admit the proof into evidence.

*Id.* (citations omitted).

The evidence which Pipes sought to be introduced does not meet the criteria articulated in *Waller*. In the first place, the incidents described in Pipes' testimony are remote in time, occurring some six to twelve years before the offense in the instant case. Furthermore, neither incident can be characterized as an incident having a quality similar to the incident in the instant case. On neither of the occasions mentioned by Pipes was Manning aggressive or violent toward him. The trial court did not err in sustaining the State's objection to the proposed evidence. Point III is denied.

Judgment is affirmed.

All concur.