**STATE of Missouri, Respondent,**

v.

**Steven R. MASDEN, Appellant.**

**No. WD 55695.**

Missouri Court of Appeals, Western District.

March 30, 1999.

Jeremiah W. (Jay) Nixon, Atty. Gen., Anne E. Hawley, Asst. Atty. Gen., Jefferson City, for respondent.

Susan L. Hogan, Appellate Defender, Kansas City, for appellant.

Before: SPINDEN, P.J., and EDWIN H. SMITH and RIEDERER, JJ.

EDWIN H. SMITH, Judge.

Steven R. Masden appeals from the circuit court's judgment of his jury convictions of murder in the first degree, § 565.020,[1] and armed criminal action, § 571.015, for which he was sentenced to consecutive terms of life imprisonment, without the possibility of parole, and life imprisonment, respectively. In his sole point on appeal, he claims that the trial court erred in admitting into evidence, over his objection, certain of the State's exhibits, consisting of slides depicting the injuries sustained by the victim, because in

---

1. All statutory references are to RSMo 1994, unless otherwise indicated.

doing so it violated his right to a fair trial and due process.

We affirm.

## Facts

On May 5, 1997, the body of Michael Davis, Jr., was found face-down in a creek bed in Platte County. His head had been wrapped in a pillowcase and plastic bag, which were tied around his neck with a telephone cord. When the police arrived at the scene, they found blood on the bridge over the creek. They seized a section of the guardrail that contained a bloody smear, the outline of fingers in blood, and what appeared to be a palm print.

On May 9, 1997, the appellant's girlfriend, Michelle Farris, went to the police and told them that she believed that the appellant had killed Davis. She told them that when she came home from work on May 4, 1997, she heard the appellant and Joel Hopkins talking about getting "Mike," and heard Joel mention a plan and state that "this has got to be done." That same night, the appellant and Hopkins left the house between 6:00 and 7:00 p.m. in Hopkins's car. When they left, the appellant was wearing jeans and a T-shirt, and Hopkins was wearing jeans and a Michigan sweatshirt. At 11:30 p.m., the appellant called Farris and told her to "get him some pants ready." When he arrived home at 5:30 the next morning, the appellant was wearing shorts and Hopkins's sweatshirt. Both the shorts and sweatshirt appeared to have blood on them.

Farris told the police that the appellant had given her the following account of what had happened the night Davis was killed. The appellant went to Hopkins's girlfriend's house. Hopkins left to get the victim. When Hopkins and the victim arrived, Hopkins brought him down to the basement where the appellant was hiding. When the victim got downstairs, the appellant hit him in the head with a cinder block, and Hopkins kicked him in the head. The appellant also slit his throat. The men left the victim's body in the basement for approximately an hour to allow it to "drain." They then placed the pillowcase and plastic bag over his head, put him in the trunk of Hopkins's car, drove him to the creek, and dumped him over the bridge.

As a result of what Farris told them, the police obtained a search warrant for Hopkins's car, Hopkins's girlfriend's house, and Farris's house. They discovered blood in the car, in the basement of the house where the murder occurred, on a block in a crawlspace in the basement, and in the basement drain. The police also determined that the bloody palm print on the bridge guardrail matched the appellant's right palm print. The appellant was arrested on May 10, 1997, and charged with murder in the first degree, § 565.020, and armed criminal action, § 571.015. The case was tried to a jury beginning on January 26, 1998.

At trial, the appellant made an oral motion *in limine* asking the court to exclude State's Exhibits 10a, 14a, 15a, 18a, 19a, and 23a, which were color slides depicting the injuries sustained by the victim. The motion was overruled. The appellant also objected to these exhibits when they were offered, claiming that they were inflammatory and prejudicial. He offered to stipulate that the victim's death had been caused by blunt trauma to the head and a sharp force injury to the throat. The objections were overruled.

Farris testified at trial, repeating the account of the murder that she had previously given to the police. The medical examiner, who had examined the victim's body, also testified. At the close of the State's evidence, the appellant made a motion for judgment of acquittal, which was denied. He presented no evidence in his own defense and made a motion for judgment of acquittal at the close of all of the evidence, which was also denied.

The jury returned guilty verdicts as to both counts. The appellant filed a motion

for a new trial, which was denied. On April 2, 1998, the trial court, the Honorable Owens Lee Hull, Jr., entered its judgment convicting the appellant of murder in the first degree and armed criminal action and sentencing him to consecutive sentences of life imprisonment, without the possibility of parole, and life imprisonment, respectively.

This appeal follows.

### Standard of Review

 Trial courts have broad discretion in deciding whether to admit evidence. *State v. Williams*, 976 S.W.2d 1, 2 (Mo. App.1998). As such, the trial court's decision to admit evidence will not be disturbed on appeal absent a clear abuse of that discretion. *Id.* The decision to admit evidence constitutes an abuse of discretion where the ruling is clearly against the logic of the circumstances and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful consideration. *Id.* To show reversible error, the appellant must not only demonstrate that the admission of the evidence was erroneous, but also that it was prejudicial. *Id.* at 3.

### I.

In his sole point on appeal, the appellant claims that the trial court erred and abused its discretion in admitting into evidence, over his objection, color slides depicting the injuries sustained by the victim because, in doing so, it violated his right to a fair trial and due process of law in that the probative value of the slides was outweighed by their prejudicial effect in that they were "gruesome, inflammatory and repetitive." The slides to which the appellant objected were: (1) Exhibit 10a, which depicted the right side of the victim's head and his neck and upper chest, showing the gaping neck wound and a "grid-like" contusion on the victim's forehead; (2) Exhibit 14a, which showed bruises on the left back side of the victim's head, neck, shoulders and back; (3) Exhibit 15a, which showed a large bruise encircling the victim's left eye, the left side of the gaping neck wound, and another sharp force injury; (4) Exhibit 18a, which showed the bruising of the victim's right ear and left forehead; (5) Exhibit 19a, which showed bruises on the back of the victim's head, neck and shoulders; and (6) Exhibit 23a, which showed extensive bruising on the victim's head, the right side of the neck wound, and bruises on the neck.

 The admissibility of colored slide reproductions, in lieu of the photographs from which they were made, is generally tested under the same principles attendant to photographs. *State v. Love*, 546 S.W.2d 441, 451 (Mo.App.1976). And, as with the admission of any other type of evidence, the trial court is vested with broad discretion in determining whether to admit photographs. *State v. Rousan*, 961 S.W.2d 831, 844 (Mo. *banc* 1998). Hence, a trial court's decision admitting colored slides into evidence, as in the case of photographs, will not be disturbed unless an abuse of discretion is shown.

 It is well settled that slides and photographs of a murder victim are admissible, even though they are undeniably gruesome and shocking, if they are relevant to a material issue in the case. *Rousan*, 961 S.W.2d at 844; *State v. Skillicorn*, 944 S.W.2d 877, 886 (Mo. *banc* 1997); *State v. Isa*, 850 S.W.2d 876, 890 (Mo. *banc* 1993); *State v. Feltrop*, 803 S.W.2d 1, 11 (Mo. *banc* 1991); *State v. Pipes*, 923 S.W.2d 349, 351 (Mo.App.1996); *State v. Lay*, 896 S.W.2d 693, 697 (Mo.App.1995). Slides and photographs are relevant where they "show the scene of the crime, the identity of the victim, the nature and extent of the wounds, the cause of death, the condition and location of the body, or otherwise constitute proof of an element of the crime or assist the jury in understanding the testimony." *Rousan*, 961 S.W.2d at 844. They are also relevant where they corroborate the testimony of the State's witnesses. *Isa*, 850 S.W.2d at 890; *Fel-*

*trop*, 803 S.W.2d at 11. Although photographs and slides are not admissible for the sole purpose of arousing the emotion of the jury or prejudicing the defendant, *Pipes*, 923 S.W.2d at 351, they are not rendered inadmissible simply because they are gruesome and may be inflammatory. *Rousan*, 961 S.W.2d at 844. "Insofar as photographs [and slides] tend to be shocking or gruesome, it is almost always because the crime is shocking or gruesome." *Id.*

The appellant first contends that the slides were inadmissible because they were highly prejudicial, given the extremely gruesome nature of the victim's injuries, and had limited probative value in that there was no dispute as to the cause of death in that he had offered to stipulate that the victim's death was caused by blunt trauma to the head and a sharp force injury to the throat. In making this argument, the appellant relies on *State v. Robinson*, 328 S.W.2d 667 (Mo.1959) and *State v. Floyd*, 360 S.W.2d 630 (Mo.1962).

The appellant's reliance on *Robinson* and *Floyd* is misplaced in that both are distinguishable from the case at bar. In *Robinson*, the Missouri Supreme Court characterized the photographs offered by the State as "obscene, offensive, vulgar, horrid, and repulsive." *Robinson*, 328 S.W.2d at 671. The court, after reversing the defendant's convictions and remanding on other grounds, stated that on his retrial the photographs should be excluded because they were not relevant in that, unlike our case, he had admitted to every fact that the State was attempting to prove with them. *Id.* In *Floyd*, the State offered into evidence a photograph of the badly decomposed body of the murder victim. The court there found that the trial court had abused its discretion in admitting the photograph because it was not offered to show the cause of death, the identity of the victim, the nature and location of any injuries, or for any other relevant purpose. *Floyd*, 360 S.W.2d at 633.

In this case, the slides were offered to show the nature of the injuries suffered by the victim, to establish the cause of death, to assist the jury in understanding the testimony of the medical examiner who examined the body, and to corroborate the testimony of Farris, who had described the murder to the police. As such, the slides were clearly relevant to several material issues in the case. *Rousan*, 961 S.W.2d at 844. The fact that the appellant offered to stipulate to the cause of death and did not object to the medical examiner's testimony did not render the slides inadmissible. The slides were not offered solely to establish that the victim's death resulted from blunt force trauma to the head and a sharp force injury to the neck. Moreover, the State was not precluded from introducing the slides simply because the appellant expressed a willingness to stipulate to the cause of death and did not challenge the State's other evidence of the same. *Skillicorn*, 944 S.W.2d at 886 (*citing Feltrop*, 803 S.W.2d at 10). "Defendants may not so easily escape the brutality of their own actions; gruesome crimes produce gruesome, yet probative, photographs." *Feltrop*, 803 S.W.2d at 11. Thus, the slides were admissible despite their gruesome and inflammatory nature, *id.*, and the fact that the appellant had offered to stipulate to and did not challenge the cause of death.

The appellant also contends that the prejudicial effect of the slides was heightened by the fact they were projected onto a large screen, increasing their tendency to inflame the passions of the jury and rendering them inadmissible. The slides of the injuries sustained by the victim are admittedly extremely gruesome and shocking. It is doubtful that their projection rendered them any more so. The fact remains that the slides had high probative value in that they were relevant to show the nature of the injuries suffered by the victim, to establish the cause of death, to assist the jury in understanding the testimony of the medical examiner who

examined the body, and to corroborate the testimony of Farris. They were clearly relevant on several material issues in the case, and when balanced against their prejudicial effect, were admissible. *Rousan*, 961 S.W.2d at 844.

■■■ The appellant next contends that the slides were inadmissible because they were highly prejudicial and had limited probative value in that they were repetitive or cumulative in that the State was also allowed to admit into the evidence the photographs, from which the slides were made, and because the victim's injuries were described through oral testimony. This argument is without merit. The record reflects that although the photographs from which the slides were made were admitted into evidence, the jury never actually saw them. The photographs were only handed to and seen by the witnesses who were testifying as to the injuries suffered by the victim. The photographs were never passed to the jury. As such, the slides were not repetitive or cumulative of any evidence viewed by the fact finder. Further, otherwise admissible slides and photographs are not rendered inadmissible simply because other evidence describes what is shown in the pictures. *Rousan*, 961 S.W.2d at 844.

For the reasons stated, we find that the trial court did not abuse its discretion in admitting the slides and allowing them to be projected onto a screen for the jury to view.

Point denied.

### Conclusion

The circuit court's judgment of the appellant's jury convictions of murder in the first degree, § 565.020, and armed criminal action, § 571.015, is affirmed.

All concur.